IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Shawn Nelson, a/k/a Shawn M. Nelson, | ) | Civil Action No. 3:07-2934-SB-JRM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Levern Cohen, Warden, Ridgeland | ) | **REPORT AND RECOMMENDATION** |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Shawn M. Nelson ("Nelson"), is an inmate at the South Carolina Department of Corrections serving a sentences of 5 years (possession of a firearm with an obliterated serial number); 10 years (trafficking cocaine); 10 years (possession of crack cocaine with intent to distribute); and 10 years (possession of crack cocaine with intent to distribute within proximity of a park). All sentences concurrent. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on October 29, 2007. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on October 31, 2007, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on February 4, 2008.

**Procedural History**

On March 6, 2002, officers of the Charleston Police Department Narcotics Unit obtained a search warrant for Nelson's residence based on a recent controlled purchase by a confidential informant ("CI"). The search warrant was executed on March 15, 2002. The officers recovered a

pistol with an obliterated serial number and quantities of cocaine and crack cocaine.  Nelson was arrested.

Nelson retained William James Thrower ("Thrower") to represent him in connection with his preliminary hearing and a motion to reduce his bond.  The bond was reduced and Nelson was released.  He talked with Thrower about continued representation, but later was appointed an attorney, Boyd Young ("Young").  Young filed a motion to require the State to reveal the name of the CI who made the controlled purchase which was the basis for the probable cause for the search warrant.  The motion was denied (App. 90[1] and Res. Mem., Ex. 8).  Thereafter, the case was called for trial, but Nelson did not appear and a bench warrant was issued.  Later, Nelson contacted Thrower and surrendered.

Nelson pled guilty to the charges and was sentenced on February 5, 2004.  He was represented by Thrower.  No direct appeal was filed.

Nelson filed a PCR on May 4, 2004. (App. 21).  Ian S. Ford ("Ford") represented Nelson.  He filed a motion to allow discovery to obtain information about the CI.  The motion was granted.  An evidentiary hearing was held on July 25, 2005.  Nelson appeared and testified.  Thrower was called as a witness by the State.  The PCR court issued an order of dismissal on September 26, 2005.  (App. 133).

Ford filed a notice of intent to appeal (Res. Mem, Ex. 11).  A Johnson[2] petition for writ of certiorari was filed in the South Carolina Supreme Court. (Res. Mem., Ex. 12) raising the following issue:

---

[1]"App. ___" refers to the appendix prepared for Nelson's appeal following denial of his application for post-conviction relief.  It is attached as Exhibit 1 to respondent's memorandum in support of its motion for summary judgment.

[2]Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

2

Whether petitioner's guilty plea complied with the mandates set forth in <u>Boykin v. Alabama?</u>

Nelson filed a pro se petition (Res. Mem., Ex. 13) raising a second issue:

Was trial counsel ineffective in advising petitioner to plead guilty when advice from trial counsel was not made based on competency of law or circumstances of case?

The appeal was transferred to the South Carolina Court of Appeals.  By order of April 25, 2007, the petitions for writ of certiorari were dismissed.  Nelson filed a pro se writ of certiorari for review by the South Carolina Supreme Court (Res. Mem., Ex. 15) raising the following issues:

1.     THE COURT OF APPEALS IN COMING TO ITS DECISION TO DENY PETITIONER'S WRIT, DID NOT UTILIZE THE MANDATORY PRECEDENT LAID DOWN BY THE U.S. SUPREME COURT.

2.     WAS THE PETITIONER'S DUE PROCESS RIGHTS AFFECTED BY THE COURT OF APPEALS NOT ACTUALLY CONSIDERING THE RECORD AS A WHOLE?

The South Carolina Supreme Court denied the petition on May 30, 2007.

### Grounds for Relief

Nelson does not state specific grounds in his present petition.  He has filed a "Memorandum in Support of Application for Habeas Corpus" in which he discusses his grounds for relief in a narrative form.  In his return, respondent has delineated six specific claims of ineffective assistance of counsel raised by Nelson's memorandum.  Nelson appears to agree with respondent's categoration of his claims.  These claims are specified and discussed below.

### Discussion

Since Nelson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id</u>. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable."  <u>Id</u>. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to

effective assistance of counsel in a criminal prosecution.  <u>McMann v. Richardson</u>, 397 U.S. 759, 771

4

n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) quoting <u>Strickland</u>, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the

state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Nelson asserts six claims of ineffective assistance of counsel. He alleges that Thrower: (1) failed to maintain a file for his case; (2) failed to obtain and review a copy of the audio-tape of the transaction involving the CI; (3) failed to review the police file; (4) failed to advise him of discrepancies in records of the police department; (5) failed to move to suppress based on a photo that was relevant to the transaction involving the CI; and (6) failed to move to suppress based on the search warrant affidavit which failed to establish the credibility of the CI.

The order of dismissal of the PCR court focused on Nelson's allegation that Thrower failed to adequately investigate his case.  The above claims involve, directly or indirectly, the failure to investigate allegations.  In this regard, the PCR court, citing Strickland, found:

> This Court finds that trial counsel conducted a sufficient investigation into the facts relating to the charges and was aware of the evidence the State planned to present against Applicant at trial. Trial counsel interviewed all police department witnesses and, following the interviews, determined that a view of the scene would not have been useful. The Applicant's prior attorney also conducted an investigation and moved to require the State to reveal the identity of the confidential informant. The motion was denied. Trial counsel reviewed the file of Applicant's prior attorney as to the earlier investigative findings and discussed the case at length with that attorney, including the contents of the audiotape and the results of the motion to reveal the confidential informant.

> This Court finds trial counsel was well aware the audiotape was unintelligible. Trial counsel testified and this Court finds the purpose of the audiotape was to monitor the safety of the confidential informant. The audiotape Was not crucial to the State's case against the

> Applicant and did not provide a defense to the charges. This Court finds trial counsel also reviewed the photographs and the affidavit supporting the search warrant and properly determined neither would support a successful challenge to the search. Trial counsel provided to the Applicant an assessment of the strength of the State's case and viability of any defenses. He also advised the Applicant he would move to suppress the drug evidence if the case proceeded to trial and that the motion would likely be unsuccessful. The discrepancies cited to by the Applicant in the law enforcement documents and photographs are merely inconsequential, semantic differences and would not have provided successful grounds to suppress the evidence.

> This Court further finds trial counsel entered into plea discussions with the State and diligently attempted to negotiate a favorable plea for the Applicant. However, counsel was not successful in plea negotiations due to the Applicant's actions prior to counsel's representation.

(App. 137).  The findings were based on the testimony of Thrower which the PCR court found credible.

A.      Investigation

Nelson asserts that Thrower failed to adequately investigate his case because he did not maintain a file; he failed to obtain and review the audio tape fo the controlled purchase; and he failed to obtain the police file.

Thrower testified that he did not have a file on Nelson's case to prepare for the PCR hearing because he had changed law firms between the guilty plea and the PCR and the file, if there was one, was with his former firm. (App. 114). He further testified that he did not create a file on Nelson's case because Boyd gave him the file that was prepared to argue the motion concerning the CI and that "when the case was over I gave it back to [Boyd]." (App. 94). Further, Thrower had access to the police file because it was a part of Boyd's file. (Id.). Thus, the record fully supports the PCR court's conclusion that Thrower adequately investigated Nelson's case with regard to these two files. Furthermore, Nelson does not assert specific prejudice concerning the files.

Thrower concedes that he did not obtain and review a copy of the audio tape of the controlled purchase by the CI. However, Thrower was aware of the tape and was told by Boyd prior to the guilty plea that it was unintelligible. (App. 88 and 94). Thrower concluded that the audio tape was not a crucial part of the case as it was not going to be used as evidence at trial. (App. 89).

The affidavit used to support the search warrant states that the CI returned from the controlled purchase "with a brown in color rock like substance that tested positive for Crack Cocaine." (App. 126). The crack cocaine was described in a Supplementary Report as "two off-white rock like substances." (App. 127). Thrower testified that he did not discuss these discrepancies with Nelson because he considered them to be insignificant. (App. 92, 119-20). The PCR court found the discrepancies to be "inconsequential, semantic difference." (App. 137).

B.      Suppression

Nelson was not charged with distributing crack cocaine to the CI.  Instead, he was charged with possessing the firearm and drugs recovered during the later search.  Thrower recognized that the most viable defense strategy was to move to suppress the fruits of the search. He was prepared to do so.  Thrower testified that a suppression motion would have been heard after selection of the jury. (App. 94-95).  He also testified that he reviewed the case and discussed it with Nelson.  He told Nelson that the odds for suppression were "almost non-existent." (Id.).  Because the State was not amenable to plea bargaining because of Nelson's earlier failure to appear, Thrower sought a more favorable judge.  This strategy was successful. (App. 96).

During PCR discovery, Nelson obtained a surveillance photograph which was "a picture of my apartment door." (App. 16).  Nelson testified that he was not shown the photograph by Thrower prior to the guilty plea, and that it could have been used to attack the affidavit supporting the search warrant. (App. 60).  The affidavit states, "The CI was observed entering the residence and leaving the residence approximately two(2) minutes after entry by Inv. A. Jenkins." (App. 126).  According to Nelson, this could not be true because the photograph shows the entrance to his apartment building and not his specific apartment. (App. 60).  However, the record contains no information from Investigator Jenkins as to his surveillance position.  Even if Investigator Jenkins saw th CI enter the building and not Nelson's apartment, it is unlikely that a suppression motion would have been granted based on this record.

Last, Nelson argues that the affidavit is facially insufficient because it does not establish the credibility of the CI.  The affidavit for a search warrant "must provide the magistrate with a substantial basis for determining the existence of probable cause" and must not be "a mere conclusory statement that gives the magistrate virtually no basis at all for making [such] a judgment." Illinois v. Gates, 462 U.S. 213, 239 (1983).  The court must look to the "totality of the

circumstances" in determining the existence of probable cause. Id.  In many instances, probable cause is found based on hearsay evidence from a confidential informant.  In those cases, a totality of the circumstances analysis necessarily "considers the informant's reliability and the basis of the informant's knowledge."  United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994).

The problem with Nelson's argument is that the affidavit is not based on statements from the CI, but on law enforcement officers' observation of the CI during the controlled purchase.  For this reason, there is no need to establish the reliability of the CI.

### Conclusion

Based on a review of the record, the undersigned concludes that the South Carolina courts properly applied the Strickland test to Nelson's claims of ineffective assistance of counsel.  It is, therefore, recommended that respondent's motion for summary judgment be granted, and the petition be dismissed without an evidentiary hearing.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 9, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

10

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

11